(41 App. Div. 247.)

In re RYDER'S ESTATE.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. WILLS—EXECUTORS—POWER OF SALE.

A testator, after nominating the executors of his will, provided as follows: "And I authorize and empower them or the survivors of them to sell and convey my real estate at any time." *Held*, that the will conferred a valid power of sale upon the executors, to be exercised in their discretion.

2. LEGACY A CHARGE ON REALTY.

A testator gave his wife a life estate in his property, with a provision that she should furnish a living to a daughter so long as she remained single; bequeathed to the daughter, to commence after the death of his wife, the income from $10,000; directed that said sum should go to the children of the daughter, if any, on her death; and authorized his executors to sell and convey his real estate. The personal property of testator was insufficient to pay the daughter's legacy. *Held*, that it was a charge on the realty.

3. SAME—RESIDUARY LEGATEES.

A testator bequeathed the income of $10,000 to his daughter during her life, provided that, if at her death she left a child or children, such child or children should take said sum, and bequeathed the same to such child or children on her death. By another clause he gave his son a life estate in all the residue of his property, remainder to the son's children. The daughter died without issue. *Held*, that the $10,000 passed to the son and his children as residuary legatees.

4. SAME—LIFE ESTATE—LIMITATION OF REMAINDER.

A testator bequeathed to his wife the income of all his estate during her life, and provided that she should during her life furnish a living to his daughter. The will further provided as follows: "After the death of my wife, I give to my daughter the use and income of $10,000 during her life, to commence at the death of my wife, if she at her death leaves a child or children, such child or children to take said sum of $10,000, and I give the same to such child or children on her death." He gave a life estate in the residue of all his estate to his son, the remainder at his death to go to his son's children. 1 Rev. St. p. 773, § 2, authorizes the creation of the same estates in personal property as are permitted in realty, and Id. p. 723, § 17, provides that, where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto shall be void, and upon the death of those

persons the remainder shall take effect in the same manner as if no other life estate had been created. *Held* that, on the death of the daughter without issue, the principal of said $10,000 passed to the son's children born prior thereto.

5. SAME—INTEREST OF LEGATEE—DEBTS—ALIENATION.

A testator, after bequeathing and devising a part of his estate to others, bequeathed and devised the income of all the residue of his estate to his son during his life, and at his death the principal to the son's children. *Held,* that the interest thereby conveyed to the son was a legal interest, which was subject to the payment of the son's debts, and also capable of alienation by him.

Appeal from surrogate's court, Queens county.

Appeal by Stephen Ryder and another from a decree of the surrogate settling the accounts of Henry A. Monfort, as executor, and directing distribution of the estate of Stephen Ryder, deceased. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Paul R. Towne, for appellant Stephen Ryder, life tenant.

Robert Stewart, for appellant special guardian.

Henry A. Monfort, for respondent Stephen Ryder, executor.

Halcyon M. Close, for respondent Lewis.

CULLEN, J. Stephen Ryder died in the month of March, 1885, leaving, him surviving, his widow and two children. By his will, dated September 5, 1878, he disposed of his estate as follows:

"Fourth. I give, devise, and bequeath to my wife, Ann, the use, interest, and income of all the rest, residue, and remainder of my estate and property, real and personal, during her life; my wife to furnish a living for my daughter Jane Ann while my said daughter remains single. Fifth. After the death of my wife, I give to my daughter Jane Ann the use or income or interest of ten thousand dollars during her life, to commence at the death of my said wife. If said Jane Ann at her death leaves a child or children, such child or children to take said sum of ten thousand dollars, and I give the same to such child or children on the death of said Jane Ann. Sixth. And I give, devise, and bequeath the use, interest, and income of all the rest, residue, and remainder of my estate to my son Stephen during his life; at his death the said rest, residue, and remainder to go to his children, to whom I give and devise the same. What I have herein given to my wife is in lieu of dower. Seventh. I nominate and appoint my wife Ann, and my nephew Stephen Ryder (son of James) and Lewis L. Fosdick of Jamaica, executrix and executors of this, my will, and I authorize and empower them or the survivors of them to sell and convey my real estate at any time."

He died seised in fee of real property in the counties of Queens and Kings. Letters testamentary were issued to his widow. By her account, which was judicially settled on November 22, 1886, it appeared that, after paying debts and expenses and two pecuniary legacies of $500 each, there remained in her hands the sum of $278.32, which represented the whole residue of the testator's personal estate. The widow and life tenant died January 24, 1892, and the testator's nephew Stephen Ryder then qualified as executor. The executor attempted to sell the real estate, whereupon the life tenant brought two actions in the supreme court to restrain the sale. After the disposition of this litigation favorably to the executor, and in June, 1897, the executor sold the real estate in Queens county, and brought

the proceeds into the surrogate's court for a settlement of his accounts and an adjudication as to the disposition of the fund. The testator's daughter Jane Ann survived the widow, and died unmarried and without issue. She left a will, whereby she appointed Nicholas Ryder and Samuel E. Eldert her executors. A judgment having been recovered against the life tenant, Stephen Ryder, in supplementary proceedings on that judgment A. V. N. Powelson was, on the 6th day of November, 1886, appointed receiver of the property of the judgment debtor. On June 18, 1892, the life tenant, Stephen Ryder, assigned all his interest in his father's estate to one Charles S. Durling, who thereafter assigned it to William S. Lewis. This assignment was made as security for a debt due from Ryder to Durling. In December, 1893, a similar assignment was made by the life tenant to one Henry J. Selover. The decree of the surrogate appealed from, after allowing the executor for his expenses in administering his trust and making certain awards of costs, adjudged that $10,000, being the amount of the legacy, the income of which was given by the testator to his daughter Jane Ann for life, upon the death of that daughter without issue passed as undisposed of to the testator's next of kin, to wit, the said daughter and his son Stephen, in equal shares, and directed the executor to pay over one-half of said sum to the personal representatives of the daughter, and the other half to Powelson, the receiver appointed in supplementary proceedings, and that the balance of the estate in the hands of the executor be invested for the benefit of the testator's son Stephen Ryder during his natural life, and upon his death be divided among his children. The life tenant and the special guardian for his children have appealed from this decree, and the principal question presented for review is the correctness of the determination of the surrogate as to the rights of third parties in the legacy of $10,000 given to the daughter Jane Ann for life.

Much of the argument of the counsel for the life tenant has been devoted to establishing the proposition that the executor had no power to sell the real estate. We think it entirely clear that the power of sale given by the will was in all respects valid, and that the executor was empowered to exercise it in his discretion. Kinner v. Rogers, 42 N. Y. 531; Skinner v. Quin, 43 N. Y. 99; Mellen v. Mellen, 139 N. Y. 210, 34 N. E. 925. We fail, however, to appreciate the relevancy of the inquiry on this appeal. If the executor had not authority to sell, the title of the life tenant or his receiver has been in no way devested, and one or the other may maintain an action in ejectment to recover possession of the property. This is also true of the remainder-men. The question involved is one of law, and can be tested in an action at law, unless the parties are concluded by the judgment in the action brought by the life tenant against the executor. Mellen v. Mellen, supra.

The next question to be determined is whether the legacy in favor of the daughter Jane Ann was charged on the testator's real estate; for, if not so charged, it failed, because the testator left substantially no personalty out of which it could be realized. If it appeared that the condition of the testator's estate was the same at the date

of his will as it was at the time of his death, it would be entirely clear that the legacy was charged on the realty; for it is not to be supposed that the testator attempted to do a vain and ineffectual thing and leave a legacy of $10,000, when there was no possibility of its being paid. McCorn v. McCorn, 100 N. Y. 511, 3 N. E. 480. There is no proof in the case as to what the estate of the testator was at the time of making the will; but it is argued that there is no presumption that any change in the circumstances took place before his death. Whatever the presumption may be, we think the fact that this legacy made the only provision for the support of the testator's daughter,—a support which he had charged upon his widow during her lifetime,—and the gift of a power of sale to the executor, taken together, evidenced an intent to charge the legacy on the realty. Taylor v. Dodd, 58 N. Y. 335; Kalbfleisch v. Kalbfleisch, 67 N. Y. 354. Therefore we must consider this fund of $10,000 as having been brought into existence, at the time of the widow's death, as a charge on the realty.

We now reach the greatest difficulty in the case,—a determination of the disposition of that fund on the death of the daughter without issue. We are entirely clear that under the will itself the remainder of the legacy, upon the death of Jane Ann without children, passed under the residuary gift in favor of Stephen and his children. "A general residuary devise carries every real interest of the testator, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed, and an intention to exclude must appear from other parts of the will, or the residuary devisee will take." Floyd v. Carow, 88 N. Y. 560. "Where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions, or other accident." Riker v. Cornwell, 113 N. Y. 115, 20 N. E. 602. See, also, Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133, and Morton v. Woodbury, 153 N. Y. 243, 47 N. E. 283. It is urged that in this case the gift is only of a residue of a residue, and therefore the general rule does not obtain, and reliance is placed on the authorities of Beekman v. Bonsor, 23 N. Y. 298, and Kerr v. Dougherty, 79 N. Y. 327. In the cases cited, and in the only decisions which assert this exception to the general rule, the legacies or devises which were held not to fall under the residuary class had failed either by lapse, by illegality, or by accident. No such case is presented here. No disposition of the testator has failed. The testator did not attempt to make any special disposition of the principal of the legacy of $10,-000 in case of the death of Jane Ann without children. In Youngs v. Youngs, 45 N. Y. 254, the testator devised real property to two nephews during their natural lives, the fee to their surviving issue. The nephews died before the testator. It was held that the residue passed to the residuary devisee. The case before us is stronger than the one cited. It was there argued that the testator must have presumed that he had disposed of the entire fee of the property. Here no such presumption can be indulged in, for the testator speaks

of the chance of his daughter leaving children as problematical,—"if said Jane Ann at her death leaves a child or children." It cannot well be urged, in the face of this language, that the testator did not foresee the possibility of Jane Ann dying without children.

The next question presented is the validity, under our statutes, of the bequest in favor of Stephen and his children, so far as the principal of the legacy is involved. It is not necessary to discuss the power at common law to carve out estates or create remainders in personal property. See Smith v. Van Ostrand, 64 N. Y. 278; Norris v. Beyea, 13 N. Y. 273. The Revised Statutes (volume 1, p. 773, § 2), with one exception, not material here, authorize the creation of the same estates and interests in personal property as are permitted in estates and lands. By section 17 (1 Rev. St. p. 723) it is provided that:

"Where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto, shall be void, and upon the death of those persons the remainder shall take effect in the same manner as if no other life estate had been created."

We think the will creates three life estates in this fund,—the first during the life of the widow, the second during the life of the daughter Jane Ann, and the third during the life of the son Stephen. It is true that this legacy is not to come into being, separate and apart from the rest of the estate, until the death of the widow. But, as the widow enjoyed for her life the whole of the estate, she necessarily enjoyed any portions of it that might be subsequently separated from the estate, or into which the whole might be divided.

It is to be observed that all the life estates are legal, not equitable, and therefore do not suspend the absolute ownership of the property for any time. By the gift of the remainder to the children of Stephen such ownership is only suspended during the lives of their parent and his sister Jane, which is within the limit authorized by statute. The will offends against the law in no other respect than in the creation of three life estates, and the consequence of such offense is not to render the will void, but to abrogate the last life estate, and to cause the remainder to take effect upon the termination of the second life estate. Purdy v. Hayt, 92 N. Y. 446. But, as was said in that case:

"It is plain, we think, that the statute only executes the remainder in possession in favor of such ascertained persons as, except for the void life estate, would, under the terms of the will or deed, be entitled to the immediate possession,"—citing Knox v. Jones, 47 N. Y. 397; Smith v. Edwards, 88 N. Y. 104.

If the remainder is contingent, the statute does not apply. In the case cited the devise was to the third life tenant "during her life, and at her death the principal to be divided equally between any children she may leave, or, if but one such child, the whole to be paid to that one"; but, upon the death of that life tenant without leaving lawful issue, then there was a gift over. It was held that the remainder to the children was contingent, and therefore failed, and that the estate went to the heirs at law of the testator. But in the case before us there is a present gift to the children of Stephen. It is not limited to those children who may survive their parent.

It is well settled by authority that under such a gift the remainder vests absolutely in each child, and is not devested by the death of that child before the decease of its parent, though it is subject to diminution by the subsequent birth of children before the time for distribution. Monarque v. Monarque, 80 N. Y. 320; 2 Washb. Real Prop. 230; 2 Jarm. Wills, 169. The gift here is a gift to a class. The rule is that under such a gift each member of the class that comes into being before the time for distribution shares in the gift. Were it not for the statutory inhibition against more than two life estates, and were the will of the testator to be fully carried out, the time for distribution would be the death of Stephen. The statute steps in and directs that the distribution shall be made on the death of Jane; but the effect of this is not to avoid the remainder. The general rule relative to a gift to a class still applies; the only result being that the class must be ascertained at the death of Jane, instead of at the death of Stephen. We therefore hold that the principal of the $10,000 legacy on the death of Jane passed to the children of Stephen born before that time. The direction of the surrogate, that the balance of the fund, after deducting the legacy and the expenses of the executor and the costs of the proceeding, be invested by the executor, and the income paid over to Stephen Ryder during his life, was erroneous. As already stated, the life estate of Stephen Ryder under the will is a legal one, and not equitable. It was at all times subject to alienation by the tenant and to the claims of creditors. Such income should therefore, first, be paid to the receiver in satisfaction of the judgment he represents, and, after that judgment is discharged, then to the assignee of the life tenant.

The decree of the surrogate should be modified in accordance with this opinion, costs of the executors and of the guardian ad litem to be paid out of the fund. All concur.