overruling the demurrer, every allegation in the present complaint (meaning, of course, concerning the alleged fraud) was or could have been litigated in the action by the ancestor, and the judgment in that case is binding on the parties to it and their privies. We do not mean to say that because there is a judgment that the first deed was not procured by fraud, but was the voluntary and valid deed of the grantor, therefore it necessarily follows that under all circumstances the second deed and the will are to be considered free from taint; but that when the plaintiff presents a case in which she charges that the second deed and the will were the product of the same identical fraud alleged to have affected the first deed, and it has been adjudged that no such fraud was perpetrated (the substantial subject of inquiry being as to that fraud), the determination made upon that issue in the former action is a good bar to this, it being pleaded as such.

The judgment appealed from must be affirmed, with costs, with leave to the plaintiff to withdraw demurrer on payment of costs in this court and in the court below. All concur.

(36 App. Div. 133.)

BAYLIES v. HAMILTON et al.

(Supreme Court, Appellate Division, First Department. January 20, 1899.)

1. WILLS—DEVISE—LIFE ESTATE—RESIDUARY DEVISEES—AFTER-BORN CHILD.
   A devise was to one for life, remainder to residuary devisees. The residuum was devised to the children of the life tenant. *Held*, that a child born after the death of testator, but before the death of the life tenant, took no interest in the remainder.

2. SAME—ANNUITY—CHARGE ON ESTATE.
   A testator bequeathed an annuity to be paid by his executors, making it a charge on certain property. *Held* that, this property failing, it did not become a general charge against the residuary estate.
   O'Brien, J., dissenting.

Appeal from judgment on report of referee.

Action by Nathalie E. Baylies against Schuyler Van Cortlandt Hamilton and others. There was a judgment for plaintiff, and some of the defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Elihu Root, for appellants.

E. R. Vollmer, guardian ad litem of appellants Schuyler V. C. Hamilton, Gertrude R. Hamilton, and Violet L. Hamilton.

L. L. Delafield, guardian ad litem of respondent Alexandra S. Hamilton.

George W. Ellis, guardian ad litem of respondent Beatrice R. Hamilton.

VAN BRUNT, P. J. This action was brought for the partition of certain property at the corner of Broadway and Spring street, in the city of New York, of three undivided eighths interest in which Robert Ray Hamilton died seised. The questions upon this appeal arise as to the construction of the will of Robert Ray Ham-

ilton. He died on the 23d of August, 1890, leaving a last will and testament, dated March 17, 1890, which was admitted to probate by the surrogate of New York county. The will in question is as follows:

"I, Robert Ray Hamilton, of the city of New York, do make, publish, and declare this my last will and testament, hereby revoking all former wills. I direct my executors, in case I die in a place not inconveniently distant from a proper crematory, to have my body cremated. I give, devise, and bequeath my interest in the property known as the 'Prescott Building,' corner of Broadway and Spring street, in the city of New York, to my executors for and during the natural life of my brother Schuyler Hamilton, Jr., in trust, nevertheless, to receive the income and profits thereof, and, after paying all taxes, insurance, interest, and repairs, to pay over the net income thereof to my said brother Schuyler Hamilton, Jr., for his support and maintenance, free from any claims of creditors, and upon his death the same shall go with my residuary estate. I authorize my executors to lease said property for a term not exceeding twenty-one years, to commence in possession. I give and devise to the child, my adopted daughter, christened Beatrice Ray, at Atlantic City in August, 1889, an annuity of twelve hundred dollars a year, to be paid to her by my executors in monthly installments during her natural life, and I hereby charge the same upon my property in the city of Brooklyn. I hereby appoint Edmund L. Baylies guardian of the person and estate of the said Beatrice Ray. I direct my executors, as soon as possible during the lifetime of the survivor of them, to expend the sum of ten thousand dollars in the purchase and erection of an ornamental fountain, which I give and bequeath to the mayor, aldermen, and commonalty of the city of New York, provided that such fountain may be erected in one of the streets, squares, or public places in said city. I give, devise, and bequeath to my aunt Nathalie E. Baylies all my property, except books, which at the time of my death may be in her house, number 369 West 28th street, in the city of New York. I give, devise, and bequeath all my books, silver, and jewelry to my cousins Edmund L. Baylies, Cornelia P. Lowell, and Walter C. Baylies. I give, devise, and bequeath my guns, rifles, boats, dogs, and my share in the Monroe Marsh Company to my friend Gilbert M. Speir, Jr., requesting him to sell such as he does not desire to keep for his own use. All the rest and residue and remainder of my property I give, devise, and bequeath to the children of my brother Schuyler Hamilton, Jr., the share of any child dying before attaining the age of twenty-one years to go to the survivor; and, in case all said children die before attaining the age of twenty-one years, I give, devise, and bequeath the said rest, residue, and remainder of my property as follows: The sum of ten thousand dollars, and all property which may hereafter come to me from my father, or any one of his blood, or its value, to the children of William G. Hamilton; all the balance of my estate to the children of Nathalie E. Baylies. I appoint Gilbert M. Speir, Jr., and Edmund L. Baylies executors of this my last will and testament. Witness my hand and seal this 17th day of March, 1890. Robert Ray Hamilton."

At the date of the testator's will, his brother Schuyler Hamilton, Jr., was a married man, having two children, the infant appellants Schuyler V. C. Hamilton and Gertrude Ray Hamilton. Ten days after the date of the will a third child, the infant appellant Violet L. Hamilton, was born. After the death of the testator, Schuyler Hamilton, Jr., married a second time, and another child was born to him on the 27th of January, 1897, the infant defendant Alexandra S. Hamilton. A child referred to in the will by the testator as his adopted daughter had been provided for by him until his death.

In construing the will, the learned referee held that the child born to Schuyler Hamilton, Jr., after the death of the testator, was entitled to participate in the final distribution of the real estate

devised to Schuyler Hamilton, Jr., for life, and that the annuity given to Beatrice Ray was a charge upon the remainder of the property in question after the death of Schuyler Hamilton, Jr., and it is from these determinations of the referee that this appeal is taken. The language of the will in respect to the final distribution of the estate devised to Schuyler Hamilton, Jr., is that "upon his death the same shall go with my residuary estate." By the residuary clause the testator devised and bequeathed all the rest and residue and remainder of his property to the children of his brother Schuyler Hamilton, Jr., the share of any child dying before the age of 21 years to go to the survivor, and, in case all said children should die before attaining the age of 21 years, there was a devise and bequest over.

It is conceded that, under the residuary clause, only those children who were living at the death of the testator were entitled to take, and that the child born to Schuyler Hamilton, Jr., after the death of the testator, has no interest in such residuary estate. It is further conceded that had the testator provided, in respect to the remainder of the real estate devised to Schuyler Hamilton for life, that upon his death such remainder should go to the children of his brother, the after-born child of Schuyler Hamilton, Jr., would have been entitled to participate. But it is claimed that, under the peculiar language of the will, such after-born child is not entitled to take because of the limitation contained in the will that such remainder shall go with his residuary estate; and that, as the after-born child could not participate in the residuary estate, it took no interest under the will in the real estate devised to Schuyler Hamilton, Jr., for life. This view we think is the correct interpretation of the will. There was no devise to a class, as would have been the case had the devise been to the children of Schuyler Hamilton, Jr. But, by the language of the will, the persons who are to take this remainder are designated, namely, those persons who took his residuary estate. The right to participate in the residuary estate is made the qualification to take under this clause disposing of the remainder of the real estate devised to Schuyler Hamilton, Jr., after his death.

It is said that the testator knew of the birth of one of Schuyler Hamilton's children after the date of his will and before his death, but he made no change in his will, and that it is to be assumed that he intended to benefit all the children that Schuyler Hamilton, Jr., should leave at his death. The testator was a lawyer. He drew his own will, and probably knew what he intended to do with his property; and, by distinct and unequivocal language, he states explicitly that the remainder shall go with his residuary estate. Now, if it goes, as has already been stated, to this after-born child, it does not go with the residuary estate. The testator by the language used distinctly provided that that remainder should go to those who took under the residuary clause, and it is only by an interpretation utterly at variance with the words used by the testator that the construction claimed by the respondent can be put upon the will. We are asked to construe this will in view of cir-

cumstances which in all probability the testator never thought of,
namely, the remarriage of Schuyler Hamilton, Jr., under the circum-
stances stated in the record.  While it is a canon of construction,
never to be disregarded, that the intention of the testator is to
govern in the interpretation of a will, although it may not be in
entire harmony with the language therein contained, yet such
method of construction is not to be resorted to where the language
is explicit and free from doubt or uncertainty.  In the case at bar
it would have been difficult for the testator to have used language
more forcible had he intended that only those who participated in
his residuary estate should take as remainder-men the interest in
the real estate the income of which was devised for life to Schuyler
Hamilton, Jr.  He has taken special care to designate the persons
who should benefit by that devise, and it does not seem to us that
this apparently clear intention of the testator is to be departed
from because we might be of the opinion that, had he anticipated
that which happened after his death, he would have made a differ-
ent disposition of this remainder.  We think, therefore, that only
the children of Schuyler Hamilton, Jr., who participate in the re-
siduary estate are entitled to take the remainder of the real estate
devised to Schuyler Hamilton, Jr., for life.

Neither do we think that the annuity given to Beatrice Ray is a
charge upon this remainder.  The language of the will is:

"I give and devise to the child, my adopted daughter, christened Beatrice
Ray, at Atlantic City in August, 1889, an annuity of twelve hundred dollars
a year, to be paid to her by my executors in monthly installments during her
natural life, and I hereby charge the same upon my property in the city of
Brooklyn."

At the time of the death of Robert Ray Hamilton, he had per-
sonal property to the amount of about $60,000, and debts amount-
ing to about $20,000, leaving a balance of $40,000, the income of
which would be applicable to the production of this annuity, and
which was clearly sufficient for that purpose.  In consequence of
litigations arising after his death, which he had no reason to antici-
pate, and which there is no evidence that he did anticipate, his
personal estate has been very materially diminished, so that it is
not sufficient for the production of this annuity.  It is claimed that
this annuity is to be produced before any person can benefit under
the provisions of the will, except as to certain specific legacies and
the devise for the benefit of Schuyler Hamilton, Jr., that being also
considered a specific devise.  We do not think that this contention
can be supported.  The fact that Robert Ray Hamilton made this
annuity a charge upon specific real estate is an evidence that it
was his intention that his other real estate should not be incum-
bered with any such charge.  But, even if this be not so, the same
reason that prevents this annuity from being a charge upon the
devise to Schuyler Hamilton, Jr., namely, that it is a specific devise,
covers the remainder after his death, because that is a specific de-
vise to certain definite individuals, who are to be ascertained, by
means of their participation in his residuary estate; the effect of
the devise being precisely the same as though he had named in-

dividually the persons who took under the residuary clause. The devise to them is just as specific as the devise to Schuyler Hamilton, Jr., and must necessarily be governed by the same rules of construction. We think, therefore, that the learned referee erred in holding that this annuity was a charge upon such remainder.

The judgment should be modified in accordance with the views expressed in this opinion, with costs to all parties appearing upon this appeal to be paid out of the estate.

BARRETT, RUMSEY, and PATTERSON, JJ., concur.

O'BRIEN, J. I concur upon the second question, as to the annuity to Beatrice Ray; but dissent on the first question, as to the right of Alexandra S. Hamilton to participate in the Broadway and Spring street property, for the reasons given by the learned referee.

---

(36 App. Div. 191.)

KLEINER v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. January 20, 1899.)

1. IMPUTED NEGLIGENCE—DRIVER OF VEHICLE—COLLISIONS.
  The contributory negligence of a driver of a carriage which occasioned a collision with a street car cannot be imputed to a person in the carriage, where the driver was not subject to his direction.

2. APPEAL—HARMLESS ERROR—INSTRUCTIONS.
  A mistaken statement of the court that it had charged that plaintiff might recover if the collision with defendant's street car occurred as described by plaintiff's witnesses is harmless, where such charge would have been correct.

3. SPECIAL DAMAGES—PLEADING AND PROOF.
  Where plaintiff alleged that a nervous shock was occasioned by injuries. evidence that she suffered from curvature of the spine is not inadmissible as constituting special damages not pleaded, if there is evidence that such curvature was caused by the nervous shock.

Appeal from trial term, New York county.

Action by Margaret Kleiner against the Third Avenue Railroad Company. From a judgment for plaintiff and an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Clifford Seasongood, for appellant.
J. Newton Williams, for respondent.

PATTERSON, J. From a judgment entered on a verdict in favor of the plaintiff in an accident case, and from an order denying a motion for a new trial, the defendant appeals. The injuries sustained by the plaintiff were caused by a collision of one of the defendant's cars with a carriage in which she was riding in company with three other women. The carriage was drawn by two horses, was proceeding along Twenty-Sixth street, and was in the act of crossing the westerly track of the defendant's road on Third avenue when the collision occurred. The negligence attributed to the defendant consists in the failure of the